UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KATHY L. DUTCHER,

                                Plaintiff,

                V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                          Defendant.
_____

**REPORT AND
RECOMMENDATION**

09-CV-1161
(LEK/VEB)

## I. INTRODUCTION

In February of 2007, Plaintiff Kathy L. Dutcher applied for disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that she has been unable to work since June of 2005 due to physical impairments. The Commissioner of Social Security denied Plaintiff's application. Plaintiff, through her attorney of record, Jonathan P. Foster, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On December 22, 2010, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for DIB on February 23, 2007, alleging disability beginning June 1, 2005. (T at 81-83).[1]   The application was denied initially and Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was scheduled for April 15, 2009, before ALJ Barry E. Ryan in Corning, New York. (T at 35). Plaintiff appeared on that date with her attorney, but no testimony was taken. (T at 36).  The hearing was adjourned at the request of Plaintiff's counsel for the specific purpose of allowing counsel to obtain additional medical records relevant to the time period at issue. (T at 38-39).   A further hearing was held on July 8, 2009, before ALJ Thomas P. Tielens.  Plaintiff appeared with counsel and testified. (T at 18-34).

On July 24, 2009, ALJ Tielens issued a decision denying Plaintiff's application. (T at 43-49).  The ALJ's decision became the Commissioner's final decision on September 24, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

Plaintiff, through counsel, commenced this action on October 19, 2009, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  The Commissioner interposed an Answer on February 8, 2010. (Docket No. 7). Plaintiff filed a supporting Brief on May 24, 2010. (Docket No. 12).  The Commissioner filed a Brief in opposition on July 8, 2010. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 8).

accompanied their briefs with a motion for judgment on the pleadings.

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[2]

---

[2]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

The ALJ concluded that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2005.   He found that Plaintiff did not engage in substantial gainful activity between June 1, 2005, the alleged onset date, through June 30, 2005, the date last insured. The ALJ determined that Plaintiff had the following medically determinable impairments considered "severe" under the Social Security Act: diabetes mellitus, obesity, knee pain, and degenerative disc disease of the lumbar spine. (T at 45).

However, the ALJ found that, between the alleged onset date and the date last insured, Plaintiff did not have an impairment or combination of impairments that met or

---

the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

medically equaled one of the impairments found in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 45-46).  This significant finding had the practical effect of foreclosing receipt of any benefits, as she would have only been eligible beyond her date last insured, had she been found disabled between the onset date and the date last insured.

The ALJ concluded that, during the relevant time period, Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work, as defined in 20 CFR § 404.1567 (a). (T at 46).

The ALJ found that, during the time period at issue, Plaintiff was unable to perform her past relevant work as a cashier or animal care worker because those jobs required lifting/carrying or standing/walking beyond a sedentary level of exertion. (T at 48).

The ALJ considered Plaintiff's age (46 years old on the date last insured), education,[3] work experience, and RFC (full range of sedentary work), and concluded that, as of the date last insured there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T at 48).  Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, from the alleged onset date through the date last insured. (T at 48).   As noted above, the ALJ's decision became the Commissioner's final decision on September 24, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-3).

As discussed in greater detail below, Plaintiff filed an application for benefits prior to filing the application under review here.   That application was denied by the

---

[3]The ALJ indicated that Plaintiff had a "high school education."  In fact, according to her testimony, Plaintiff attended, but did not graduate from, high school.  There is no indication that this apparent discrepancy materially impacted the ALJ's decision.

Commissioner via a decision issued on May 30, 2005. (T at 20). No appeal was taken from that decision and, as such, the parties concede that it is entitled to *res judicata* effect. Thus, the question presented here is whether Plaintiff was disabled during the approximately one-month period between the date of the decision denying Plaintiff's prior application and the date last insured. (T at 20).

### 2.   Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. She offers three (3) principal arguments in support of this position. First, Plaintiff contends that the ALJ did not give proper consideration to the opinion of her treating physician. Second, Plaintiff argues that the ALJ did not adequately develop the record. Third, Plaintiff asserts that the ALJ failed to properly evaluate her credibility. This Court will address each argument in turn.

### a.   Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of opinion; (4) consistency; (5) specialization of the treating physician; and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Plaintiff points to an assessment signed by Dr. Michael Boyek, her treating physician.[5]  That assessment indicated that Plaintiff could perform no lifting or carrying due to back problems. (T at 373).  Further, Plaintiff was found to be capable of sitting for one hour at a time without interruption and no more than 4 hours in an 8-hour work day. (T at 374).  Plaintiff could stand or walk for 15 minutes at a time without interruption and no more than 1 hour in an 8-hour work day. (T at 374).  The assessment indicated that Plaintiff could never climb stairs/ramps/ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. (T at 376).  In sum, the assessment concluded that due to physical limitations (including obesity), pain related to disc problems, and diabetes, it would be "impossible" for Plaintiff to function in "any type of employment." (T at 378).

The ALJ referenced this assessment, but gave it "no weight" as it referenced a treating relationship that began in July of 2008 and only assessed Plaintiff's condition since that time. (T at 47).  This Court finds that the ALJ's decision in this regard was consistent

---

[5]It appears the statement in question was acutally prepared by Amy Welch, a physician's assistant, apparently working in collaboration with Dr. Boyek.

with applicable law and supported by substantial evidence.

The assessment was dated March 12, 2009, and references a treatment relationship beginning in July of 2008. (T at 372).  The issue before the ALJ was whether Plaintiff was disabled in June of 2005. (T at 45).  Thus, evidence from a period more than three (3) years later was, without more, is not entitled to controlling weight.  In other words, absent an indication that the assessment was intended as a retrospective diagnosis concerning Plaintiff's condition in June 2005, it was of limited relevance to the issue before the ALJ.

Moreover, the contemporaneous evidence from the relevant time period does not indicate any significant level of disability at that time and supports the ALJ's overall assessment of Plaintiff's residual functional capacity.   For example, on June 22, 2005, Dr. Ferrol J. Lee referenced Plaintiff's diagnosis of type 2 diabetes and indicated that Plaintiff had "rare hypoglycemic epsiodes that [were] easily aborted by eating." (T at 418).

In July of 2005, a treatment note from Plaintiff's treating physician, Dr. Muhammad Wattoo, indicated that x-rays of Plaintiff's lumbar spine did not contain "any obvious major abnormality." (T at 419).  Dr. Wattoo noted that Plaintiff complained of pain in the deltoid area of her shoulder, as well as in the left gluteal and greater trochanteric area. (T at 419). Dr. Wattoo administered cortisone injections and prescribed Motrin for the pain. (T at 419). According to progress notes completed by Dr. Wattoo shortly thereafter, Plaintiff's symptoms were "practically resolved" and her pain problem was described as "mild."  (T at 421).  Dr. Wattoo recommended "[g]eneral conservative management," in the form of weight reduction and a change in Plaintiff's "habits in reference to ambulation." (T at 421).

An x-ray report from July of 2005 indicated an "[u]nremarkable lumbar spine with just minimal degenerative changes." (T at 394).  An x-ray analysis from September of 2005

noted "mild osteophytosis" of the left hip and evidence of a "chronic strain of the lateral colateral ligament" in the left knee, along with "moderate degenerative change." (T at 392).

Plaintiff testified that she shared housework with her husband in 2005. (T at 25). She also explained that, during that time period, she babysat her two grandchildren three times a week for at least a half a day at a time, with some part-time help from her husband. (T at 30-31).  This level of activity is supportive of the ALJ's finding that Plaintiff retained the RFC to perform at least sedentary work.

In light of the foregoing and in the absence of evidence that the disabling limitations assessed in March of 2009 related back to the June 2005 time period at issue, this Court finds no reversible error in the ALJ's decision to afford no weight to the March 2009 assessment offered by a physician's assistant working in apparent collaboration with Plaintiff's treating physician.

### b.    Development of the Record

The ALJ has an affirmative duty to develop the administrative record, even where (as here) the claimant is represented by counsel. See Pratts v. Chater, 94 F.3d 34, 37 (2d Cir.1996).  In this case, Plaintiff contends that the ALJ should have developed the record more fully by (a) seeking a retrospective diagnosis from Dr. Boyek and (b) obtaining a copy of an April 2005 assessment from Dr. Wattoo.

For the following reasons, this Court finds Plaintiff's arguments unavailing.

First, the regulations place the burden of establishing disability on a claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use

to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence."); § 404.1512(c) ("You must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled.").

As such, Plaintiff had the obligation and burden of producing evidence related to the relevant time period.  Although the ALJ also has an affirmative duty to develop the administrative record, the ALJ's duty to is not unlimited.  Plaintiff cannot simply identify arguable gaps in the administrative record and claim that these gaps are a *per se* basis for remand, particularly where (as here) Plaintiff and her counsel requested and received an adjournment of the administrative proceedings for the express purposed of obtaining medical records from the time period at issue.  Indeed, at least one court in this Circuit has held that the ALJ may satisfy the duty to develop the record by asking the claimant's counsel to obtain additional medical documentation. See Rivera v. Commissioner of Social Sec., 728 F. Supp.2d 297, 330 (S.D.N.Y. 2010)("Accordingly, the ALJ's request that plaintiff's attorney obtain the recent treatment records from Lincoln Hospital fulfilled his obligations with regard to developing the record.").

The Second Circuit's summary order in Jordan v. Commissioner of Social Security 142 Fed.Appx. 542, 543, 2005 WL 2176008, at *1 (2d Cir. Sep't 8, 2005)(unpublished), while non-precedential, is nonetheless instructive:

> The ALJ fulfilled his duty to develop the administrative record. . . . Although the ALJ did not contact or obtain records from Dr. Arena, a treating physician whom Jordan mentioned at his hearing: [i] Jordan's counsel volunteered to secure Dr. Arena's

records; [ii] the ALJ kept the record open to allow counsel to do so, and later contacted counsel to remind him that no evidence had been received and that a decision would be made on the existing record unless such evidence was timely submitted; [iii] counsel subsequently contacted the Social Security Administration to advise it that Jordan had "nothing further to add" to the record; and [iv] Jordan did not request the ALJ's assistance in contacting or securing evidence from Dr. Arena. Under these circumstances, we cannot say that the ALJ failed to discharge his duty to develop the record.

In the present case, the administrative proceedings were adjourned for nearly three months for the specific purpose of allowing Plaintiff's counsel to obtain evidence from the time period at issue. (T at 37-39). The records ultimately included in the administrative transcript from that time period are supportive of the ALJ's assessment. Plaintiff's argument that the ALJ failed to adequately develop the record is not supported by any credible explanation as to how or why counsel was unable to obtain the additional information during the adjournment period. Under these circumstances, this Court cannot say that the ALJ did not properly discharge his duty to develop the record.

Plaintiff also suggests that the ALJ should have obtained an April 2005 disability assessment completed by Dr. Wattoo. According to Plaintiff, this document was not included in the records submitted to the ALJ "due to a hospital oversight." However, Plaintiff does not offer any explanation as to why this oversight was not corrected by his counsel either before the ALJ or via the Appeals Council. Moreover, the issue of the April 2005 disability assessment was addressed in a prior administrative decision and, as such, re-litigation of the weight to be assigned that assessment is barred.

Plaintiff filed her first DIB application in November of 2002. (T at 10). The application

was reviewed and denied by ALJ Barry E. Ryan. (T at 10-17).[6]  In his decision denying benefits, ALJ Ryan discussed Dr. Wattoo's April 2005 disability assessment, noting that Dr. Wattoo opined that Plaintiff was able to lift/carry 10 pounds on a frequent basis, stand/walk for less than 2 hours in an 8-hour workday, and that her ability to sit was unaffected by her impairments. (T at 14).  ALJ Ryan concluded that "the minimal positive physical examination findings of record, the extent of her overall activities, and the positive effect of medications," combined with Dr. Wattoo's assessment, indicated that Plaintiff was capable of performing work activity consistent with the sedentary level of exertion. (T at 14).

It is undisputed that ALJ Ryan's decision was never appealed from or otherwise challenged.  As such, ALJ Ryan's consideration of the April 2005 assessment cannot be re-litigated and this Court finds no error in the fact that ALJ Tielens did not seek to have that assessment included as part of the record with respect to the second DIB application. Moreover, progress notes from Dr. Wattoo completed shortly after the time period at issue described Plaintiff's symptoms as "practically resolved" and indicated that her pain problem was "mild."  (T at 421).

### c.    Credibility

Courts in the Second Circuit have determined pain is an important element in

---

[6]For some reason, the copy of ALJ Ryan's decision included in the administrative record is undated and unsigned.  However, neither party appears to dispute the validity or accuracy of the copy reproduced in the record.  During the administrative hearing, ALJ Tielens indicated that ALJ Ryan's decision was issued on May 30, 2005, and that date was acknowledged by Plaintiff's counsel. (T at 20).  It was further discussed and stipulated that the relevant time period for purposes of DIB eligibility in the context of Plaintiff's second application was May 31, 2005 (the date after ALJ Ryan's decision) through June 30, 2005 (the date last insured). (T at 20).  Plaintiff's alleged onset date was June 1, 2005 (T at 81-83), but that date appears to have been chosen because it corresponded with the prior ALJ's decision. Technically, the alleged onset date should probably have been May 31st (the day after the prior decision), but this minor discrepancy has no material bearing on the resolution of this case.

disability claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's

14

credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified that, during the time period at issue, constant leg pain limited her ability to stand and walk. (T at 26).  She stated that she could only sit for approximately twenty minutes at a time due to back pain. (T at 27-28).  Plaintiff also testified regarding the effects of knee pain, sleep difficulties, and carpal tunnel syndrome. (T at 28-29).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limited effects of the symptoms were not credible to the extent alleged. (T at 47).

This Court finds that the ALJ's assessment was supported by substantial evidence,

15

including (as discussed above) the lack of objective clinical findings and other evidence of disabling impairments, as well as the contemporaneous progress notes from Plaintiff's treating providers.

The ALJ "is entitled to rely not only on what the record says but what the record does not say." Dumas v. Schweker, 712 F.2d 1545, 1553 (2d Cir.1983).  Here, there is nothing in the medical record to support Plaintiff's allegations of disabling pain during the one-month period at issue. The seriousness of Plaintiff's pain after the date last insured is not at issue. Any limitations resulting from that pain cannot qualify Plaintiff for DIB unless she was disabled prior to her date last insured. Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir.1989).

Plaintiff argues that the ALJ should have given her testimony enhanced credibility because of her outstanding work history.  Prior to reaching age 40, Plaintiff had worked approximately 18 years. (T at 25).  Indeed, Plaintiff's testimony was entitled to enhanced credibility based upon her good work record. See Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983)("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

However, "[w]hile a plaintiff with a good work history is entitled to substantial credibility when claiming they are no longer able to work, the medical record must still support a finding of claimant's disability." Johnson v. Astrue, No. 07-CV-0322C, 2009 WL 3491300, at *7 (W.D.N.Y. Oct. 23, 2009) "In short, a good work history might show a strong financial motivation to work, it cannot be a substitute for evidence of a medically supported disability." Id.  In the present case, for the reasons outlined above, the evidence of a medically supported disability during the time period at issue was lacking and the ALJ thus did not commit reversible error in assessing Plaintiff's credibility.

16

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### D.   Request for Sympathy

In an apparent acknowledgment of the weakness of Plaintiff's legal arguments, Plaintiff's counsel makes the following request:

> As attorneys and judges we are often presented situations in which the spirit of the law outweighs the letter of the law which is present in the instant case.  If benefits are denied in the present case, the Plaintiff will be precluded from receiving any Social Security disability benefits due to her date last insured. This is an opportunity to help end the Plaintiff's continual suffering and remedy a situation involving a deserving

17

claimant.

(Docket No. 12 at p. 12).

Plaintiff's counsel is quite correct in noting the significant impact of a finding that Plaintiff did not become disabled prior to the date last insured.  Generally, if a person otherwise eligible to receive DIB becomes disabled prior to their date last insured, they receive DIB benefits until the occurrence of one of the following: death, retirement (at which point benefits continue to be paid as retirement benefits), or termination of the disability (*i.e.* the person experiences medical improvement and engages in substantial gainful activity). See 42 U.S.C. § 423 (establishing eligibility requirements for DIB and setting forth rules governing duration of benefit payments).  As such, if Plaintiff became disabled while eligible for DIB coverage (and if she continued to be disabled thereafter), she would receive significant payments from the Social Security Administration.

However, while this Court feels sympathy for anyone who suffers from chronic pain (whether it is disabling or not), this Court is not invested with the authority to review Plaintiff's eligibility for benefits *de novo*, let alone to substitute its own notions of fairness and sympathy for the requirements of the law.  The co-equal elected branches of the federal government have established the parameters for determining benefit eligibility and defined the scope of the judiciary's role in reviewing those determinations.  Appeals to sympathy and requests for more lenient standards for determining benefit eligibility must be directed to the elected branches of government.

The following observation from a Second Circuit Court of Appeals judge is apt:

> Denying statutory benefits to people in need of assistance is always an unpleasant task. The temptation to blur the distinction between individual need and statutory eligibility is

18

> strong; but our authority as judges often fails to match our
> sympathy for our fellow human beings. Absent [legal]
> transgressions, we have no more power to disregard the
> substantive and procedural eligibility limitations built into
> legislative benefit schemes than we have to change the nature
> and scope of the benefits themselves. It should not be
> otherwise. By in effect trying cases de novo at the district and
> even the court of appeals level ... we reduce the entire
> administrative process to a mere rehearsal for the actual
> determination, thereby ensuring that we will be seeing an
> ever-increasing number of these cases in the courts in the
> years to come."

Singletary v. Sec'y of Health & Human Services, 623 F.2d 217, 220 (2d Cir.1980) (Meskill,

J., dissenting).  Any sympathy this Court might have for Plaintiff personally must be set

aside and, where the law is clear, as it is here, it must be applied without passion or

prejudice.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial

evidence supports the Commissioner's decision, including the objective medical evidence

and supported medical opinions. It is clear to the Court that the ALJ examined the record,

afforded appropriate weight to the medical evidence, including Plaintiff's treating

physicians, and afforded Plaintiff's subjective claims of pain and other limitations an

appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds

no reversible error.  Because the Court further finds that substantial evidence supports the

Commissioner's decision, it is respectfully recommended that the Commissioner's Motion

for Judgment on the Pleadings be GRANTED and that Plaintiff's Motion for Judgment on

the Pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   March 7, 2011

Syracuse, New York

## V. ORDERS

Pursuant   to   28   USC   §636(b)(1),   it   is   hereby   ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

20

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 7, 2011

Victor E. Bianchini
United States Magistrate Judge

21